**Thomas TURNPAUGH, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 25S00–8606–CR–568.

Supreme Court of Indiana.

April 20, 1988.

James O. Wells, Jr., Rochester, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant directly appeals his convictions for child molesting, class C felony, and attempted child molesting, class B felony. He received a sentence of seven years for the C felony and a sentence of fifteen years for the B felony, the latter enhanced by thirty years due to an habitual offender determination.

There are three issues presented for review: (1) whether the two causes were improperly joined for trial; (2) whether results of tests performed on samples from a "rape kit" were improperly admitted due to loss of the samples and kit; and (3) whether there was sufficient evidence of identity to support the convictions.

These are the facts from the record which tend to support the determination of guilt. Mary, her son Andy, and her boyfriend Sam were temporarily living with appellant and his wife. Appellant and Sam picked up Mary's two sisters, Judy, age fourteen, and Penny, age eight, so they could visit with Mary and spend the night. Mary and Sam left the children, Judy, Penny and Andy, at appellant's house to sleep while they slept in a nearby trailer. In the early morning hours of March 21, 1982, the older child, Judy, knocked on the door of the trailer and informed her sister, Mary, that appellant had raped her. Mary and Sam retrieved Penny and Andy and some of their belongings from appellant's house and called a friend to pick them up and take them to the girls' mother's house. Judy was then taken to the police station to

report the incident and to the hospital for an examination at which time the doctor prepared a rape kit. A few days later, Judy's eight year old sister, Penny, reported to a welfare department case worker that on March 20, the evening preceding the alleged rape of Judy, appellant had attempted sexual intercourse with her. Neither victim was able to identify appellant at trial although both were acquainted with him prior to these incidents.

## I

Error is asserted in the joinder for purposes of trial of the two offenses. It is contended that the causes were joined solely because they were of similar nature. Appellant urges that since there were different victims alleged, the informations were filed two years apart, and the offenses occurred on different days, there was no basis for the joinder.

I.C 35–34–1–9(a) provides that:

"(a) Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

\* \* \* \* \* \*

(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan."

■ While appellant's compound premise is true it does not include all material factors. Each offense did deal with a different individual, however the victims were sisters who were both spending the night in appellant's home. Further, while the events occurred on different days, the attempted molestation of Penny occurred on the evening of March 20, 1982, and the incident with Judy occurred later that night, in the early morning hours of March 21, 1982. The informations were filed two years apart; however, appellant was absent from the jurisdiction for most of that time period.

The fact that the crimes charged occurred the same night and were committed against young sisters who were overnight guests sufficiently shows that the misconduct in each case was part of a series of acts committed together and part of a single scheme or plan. There was no error committed by the joinder of these offenses.

## II

A "rape kit" was assembled at the hospital at the request of police investigators. It contained samples taken from the older victim, Judy, on March 21, 1982, the same day she was allegedly molested. Later analysis of vaginal and cervical swabs from the rape kit revealed the presence of sperm and indicated the strong possibility that the producer of the sperm was a secretor who had type O blood. No analysis was made of hair samples taken from her pubic region and also included in the rape kit. The items of physical evidence comprising the rape kit were then negligently lost by the police.

The trial court denied a motion to dismiss the prosecution and a motion to suppress the State's test results, which motions were based upon the inability of the prosecution to produce the material comprising the rape kit for independent testing by defense experts. Objections upon the same grounds were made to the admission of trial testimony describing the collection of the items in the kit, their testing, and the results of such testing. The trial court overruled the objections. It is claimed that independent tests could have produced results favoring the defense, namely in the case of the swabs that no sperm was present or that the samples were insufficient to show type of blood, or in the case of the hair samples, that some person other than appellant had been near the girl.

■ The defendant in a criminal case has the right to examine physical evidence in the hands of the prosecution. *Miller v. Pate* (1967), 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690. Our prosecutors are representatives of the sovereign, and serve the twofold purpose of its law, namely that the guilty not escape and that the innocent not suffer. *Berger v. U.S.* (1935), 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. A serious breach of duty occurs when the prosecution willfully or intentionally, when unjustified

by a public policy, obstructs the access of the defense to material evidence in its possession. *Dorsey v. State* (1970), 254 Ind. 409, 260 N.E.2d 800. *Birkla v. State* (1975), 263 Ind. 37, 323 N.E.2d 645. It is likewise a serious breach when through lack of vigilance the negligent destruction or withholding of material evidence by law enforcement officers or the prosecutor occurs. In such instances grounds for reversal may exist. *Randall v. State* (1983), Ind., 455 N.E.2d 916.

■ Because of the peculiar circumstances of this case, the loss of the evidence and the ruling permitting the prosecution to present the results of its tests upon such evidence do not warrant reversal. The dominant potential which the lost items had was to support the conclusion that no one had had intercourse with the older victim Judy, or that someone other than appellant had had intercourse with her. The evidence heard by the jury included the direct testimony of Judy that she had had intercourse at the time and the testimony of the sheriff describing appellant's admission that he had had intercourse with her. Further, the State made no attempt to directly link appellant with the evidence obtained. Appellant did not have his blood typed by the prosecution, and the State did not attempt to prove that he possessed the same type of blood or that he was a secretor. The prejudice to appellant's defense as a result of his inability to examine the lost samples does not have that significance that would warrant this court in finding reversible error.

### III

■ The sufficiency of the identification evidence is also challenged based on the fact that neither victim could identify appellant at trial. Penny responded "I don't know" when asked if the person she knew as Thomas Turnpaugh was present in the courtroom. She also indicated she wasn't sure. Judy testified "I don't see him" in response to the same question.

Mary and Sam testified that appellant was the Thomas Turnpaugh whom they knew and the person in whose house they had stayed along with Judy and Penny. Judy and Penny testified that at the time of the incident they knew Thomas Turnpaugh and were spending the night in his house and that he was the individual who molested, or attempted to molest, them. At the time of the incident they were fourteen and eight years old respectively.

■ The trial occurred three years and eight months later. The inability of the girls to identify appellant at trial goes to the weight of the evidence and not the sufficiency. The jury had sufficient evidence before it from which it could determine, beyond a reasonable doubt, that appellant was the perpetrator of the crimes alleged. Further, in a statement to police in response to these charges, he admitted he "screwed" the fourteen year old. There was sufficient identification testimony presented to support the convictions.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.