## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 05 2017, 8:23 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael French,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 5, 2017

Court of Appeals Case No.
48A02-1608-CR-1778

Appeal from the Madison Circuit Court

The Honorable David A. Happe, Judge

Trial Court Cause Nos.
48C04-1511-FA-1874
48C04-1511-FC-2003

**Baker, Judge.**

[1] Michael French appeals his convictions for two counts of Class A Felony Child Molesting,[1] one count of Class B Felony Incest,[2] three counts of Class C Felony Incest,[3] and five counts of Class C Felony Child Molesting.[4] French argues that the trial court erred in denying his motion to sever and that the sentence imposed by the trial court was erroneous and inappropriate in light of the nature of the offenses and his character. Finding no error, we affirm.

## Facts

[2] French is the father of K.F., born in July 1995; A.F., born in February 1999; H.F., born in July 2001; and C.F., born in December 2007. All the girls are half-sisters except for A.F. and H.F., who share the same parents. While growing up, K.F. lived predominantly with her mother, though she frequently saw and spent overnights with French. H.F. also lived predominantly with her mother, though she would visit French on weekends. The events in question occurred between July 23, 2001, and August 16, 2013, in several different residences.

[3] The first incident took place in July 2001, when K.F. was six years old, while she was visiting French's Alexandria trailer. K.F. awoke early one morning to

---

[1] Ind. Code § 35-42-4-3(a). All the charged offenses occurred before the criminal code revision in 2014. Accordingly, all charged offenses are under the prior code sections.

[2] Ind. Code § 35-46-1-3(a).

[3] I.C. § 35-42-4-3(b).

[4] I.C. § 35-46-1-3(a).

discover French rubbing her bare genitals with his foot. K.F. testified that while rubbing her, French was holding H.F. (an infant) while then-toddler A.F. stood next to him. French asked K.F. if she would like to be woken up like that every morning and, although she replied in the negative, he continued to touch K.F.'s bare genitals with his hands on numerous other occasions.

[4] The incidents escalated when K.F. was ten years old while she was visiting French's Elwood home. At this residence, K.F. slept by herself downstairs. On one occasion, K.F. woke up in the middle of the night to discover French sitting at the edge of her bed, attempting to pull her to the edge of the bed. After overcoming his daughter's resistance, French undressed her and performed oral sex on her. K.F. testified that this happened on several other occasions, along with continued touching and rubbing of her genitals. K.F. also testified that around this time, French began providing her alcohol and that, at some point, he convinced her to take two pills for her anxiety.

[5] French's actions again escalated at his Frankton trailer when K.F. was thirteen. K.F. awoke on the floor, without her pants, while French was on top of her. French inserted his penis into her vagina, and after K.F. began to yell, he covered her mouth to prevent her from waking others in the trailer. In total, K.F. estimated that French had intercourse with her five to six times over a three-year period. Additionally, K.F. testified that French never wore condoms and that he ejaculated at least once.

[6] When K.F. turned fifteen and entered high school, she was living full-time at French's Washington Street house to gain more independence and because of disagreements with her mother. By this point, French regularly gave her alcohol. K.F. testified that she drank in part because it "numbed" her and that she was drinking "[a] lot." Tr. Vol. II p. 167-68. When K.F. was sixteen, French challenged her and his then-wife to a drinking contest on a school night, during which K.F. consumed at least thirteen shots of whiskey—enough to make K.F. vomit and cause his wife to pass out. French then removed K.F.'s pants and had intercourse with her.

[7] French's acts were not limited to K.F. H.F., his third daughter, is approximately six years younger than K.F. When H.F. was seven and visiting the Elwood house, French began to touch her in a similar fashion to her older half-sister. He would wake her up by rubbing her genitals with his hands, both outside and inside her clothing.

[8] When H.F. was in the sixth grade and visiting her father at his Alexandria apartment, French removed her from a bed she was sharing with A.F. and took her to his bedroom. He put her in his bed and began rubbing her genitals, but she fled to the bathroom to cry and then went back to her room. French then returned to his daughters' room, picked H.F. back up, and took her back to his room to rub her again. On another occasion in the same apartment, H.F. was sleeping on the downstairs couch and French rubbed her genitals on the outside and inside of her clothing.

[9] Both K.F. and H.F. developed mental health issues over this time. K.F. became anxious and was afraid to be alone, while H.F.'s mother testified that H.F. began to isolate and cut herself. During this entire period, K.F. repeatedly told her father that his actions made her feel "gross," that she wanted him to stop, and that she would tell on him if he did not stop. *Id.* at 181-82. French would respond by threatening that if he went to jail, she would never be able to see her sisters again and that it would ruin everyone's lives. When K.F. turned twenty, her concern for her younger sisters finally drove her to tell family members what had happened. Eventually, both K.F. and H.F. spoke to the police.

[10] French was arrested and charged in two separate causes in November 2015. With respect to K.F., he was charged with two counts of Class A felony child molesting, one count of Class B felony incest, two counts of Class C felony child molesting, and three counts of Class C felony incest. With respect to H.F., he was charged with three counts of Class C felony child molesting. On February 4, 2016, the trial court granted the State's motion for a joint trial. On May 2, 2016, French filed a motion to sever; following a hearing on May 16, 2016, the trial court denied the motion. French renewed his motion for severance at the start of the trial, but the trial court denied the motion.

[11] French's jury trial took place from June 14 through 17, 2016; the jury ultimately found French guilty as charged. On July 11, 2016, the trial court sentenced French as follows:

- Forty years for each count of Class A felony child molesting, to be served consecutively;
- Eight years for two counts of Class C felony incest, to be served concurrently with the Class A felony sentence;
- Eight years for two counts of Class C felony child molesting, to be served concurrently with the Class A felony sentence; and
- Five years for each of the three remaining counts of Class C felony child molesting, to be served consecutively to each other and to the Class A felonies.[5]

Therefore, French received an aggregate term of ninety-five years imprisonment. He now appeals.

# Discussion and Decision

# I.   Motion to Sever

[12]   French first alleges that the trial court erred by denying his motion to sever the charges. Two or more offenses may be joined in the same charging information in two instances: (1) if the offenses "are of the same or similar character," or (2) if the offenses "are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Ind. Code § 35-34-1-9(a). The standard of review for a motion to sever will vary by the reason the charges were joined:

> Where the offenses have been joined *solely* because they are of the same or similar character, a defendant is entitled to severance as

---

[5] The sole count of Class B felony incest was merged with the first count of Class A felony child molesting. One of the counts of Class C felony incest was merged with the second count of Class A felony child molesting.

a matter of right. Ind. Code § 35–34–1–11(a) (2008). The trial court thus has no discretion to deny such a motion, and we will review its decision de novo. *Jackson v. State*, 938 N.E.2d 29, 36 (Ind. Ct. App. 2010). But where the offenses have been joined because the defendant's underlying acts are connected together, we review the trial court's decision for [error]. *Craig v. State*, 730 N.E.2d 1262, 1265 (Ind. 2000).

*Pierce v. State*, 29 N.E.3d 1258, 1264 (Ind. 2015) (emphasis original). "To determine whether offenses warrant joinder [when the offenses were joined because the underlying acts were connected together], we ask whether the operative facts establish a pattern of activity beyond mere satisfaction of the statutory elements." *Id.* at 1266.

[13] The trial court found that the offenses were properly joined and French was not entitled to severance because French's underlying acts were connected. Specifically, the trial court noted that: (1) there was a common familial relationship; (2) there was an overlap in time between the offenses; (3) there was a common narrative linking the offenses against one victim to another; and (4) there was an "interconnected investigation." Tr. Vol. II p. 21-22.

[14] Initially, we note that the charges were clearly connected by French's exploitation of his position of trust as a father and a custodial adult. *See Ennik v. State*, 40 N.E.3d 868, 876 (Ind. Ct. App. 2015) (quoting *Pierce*, 29 N.E.3d at 1266) ("It is well established that offenses can 'be linked by a defendant's efforts to take advantage of his special relationship with the victims.'"), *trans. denied*; *see also Turnpaugh v. State*, 521 N.E.2d 690, 692 (Ind. 1988) (finding child

molestation charges were sufficiently connected where victims were sisters who were overnight guests); *Pierce*, 29 N.E.3d at 1266-67 (finding that causes at issue were connected by defendant's "exploitation" of his position of trust).

[15] Furthermore, the incidents were connected by French's victims, his method, and an overlap in time. *See Pierce*, 29 N.E.3d at 1266 (finding that the defendant's actions were also connected "by his victims, his method, and his motive"). French's victims were both his biological daughters. French's methods were largely identical—he usually initiated his assaults by rubbing his daughters' genitalia while they were sleeping. Finally, the crimes overlapped in location, at least in part, because K.F. and H.F. both testified that they were molested at the Elwood house. Accordingly, the trial court did not err in denying French's motion to sever.

## II. Sentencing

## A. Aggravating Factors

[16] French argues that the trial court erred because it found aggravating factors that were not supported by the record. In reviewing the trial court's finding of aggravating and mitigating factors, we note that "[s]entencing decisions are within the sound discretion of the trial court." *Coy v. State*, 999 N.E.2d 937, 946 (Ind. Ct. App. 2013). We will reverse only "if the decision is 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Id.* (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007)). A trial court may

err if it enters or finds aggravating factors that are not supported by the record or if "the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration . . . ." *Anglemyer*, 868 N.E.2d at 490-91.

[17] In the present case, the sentencing order listed five aggravating factors:

- "Multiple victims involved,"
- "Number of counts for which the jury found the defendant responsible,"
- The period of time "over which this abuse occurred,"
- "Facilitated the commission of the crimes by giving at least one of the victims drugs and alcohol," and
- "Abused position of trust."

Appellant's App. Vol. II p. 26-29. The record from the sentencing hearing also reveals that the trial court considered French's threats to K.F. as an aggravating factor and his limited criminal history as a mitigating factor. French contends that the record does not support the findings that he threatened H.F. or that he gave one of his daughters drugs and alcohol in the facilitation of his crimes.

[18] Assuming solely for argument's sake that the trial court erred in the consideration of the challenged factors, we cannot say that French would be entitled to resentencing. *See, e.g.*, *Sargent v. State*, 875 N.E.2d 762, 769 (Ind. Ct. App. 2007) ("If the factors are not supported by the record . . . then remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record."). Here, the trial court gave great weight to several aggravating factors that are amply supported by the evidence and are not challenged by French: (1) the abuse was prolonged and

occurred over the span of approximately twelve years; (2) French abused multiple victims; (3) there were so many counts for which the jury found French responsible; and (4) French victimized his own daughters, thereby abusing a position of trust and power.

[19] Considering the gravity and the number of unchallenged aggravating factors and the lack of any compelling mitigating factors, we believe that the trial court would have imposed the same sentence even if the challenged factors had been omitted. We decline to reverse on this basis.

## B. Appropriateness

[20] Finally, French contends that his sentence should be amended because it was inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that we may revise a sentence if, "after due consideration of the trial court's decision," we find that "the sentence is inappropriate in light of the nature of the offense and the character of the offender." We must "conduct [this] review with substantial deference . . . to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[21] French was sentenced on nine convictions. The sentencing options and outcomes for each conviction are as follows:

- He was convicted of two Class A felonies. For each of these convictions, he faced a sentence of twenty to fifty years, with an advisory term of thirty years. Ind. Code § 35-50-2-4(a). He received a forty-year term for each offense, to be served consecutively.
- He was sentenced on seven Class C felonies. For each of these convictions, he faced a sentence of two to eight years, with an advisory term of four years. I.C. § 35-50-2-6(a). For four of the counts—those corresponding to his crimes against K.F.—the trial court imposed four eight-year sentences to be served concurrently with the second Class A felony. For the final three counts—those corresponding to his crimes against H.F.—the trial court imposed three five-year sentences, to be served consecutively to each other and to the Class A felonies.

Thus, the trial court imposed an aggregate term of ninety-five years. Had the trial court imposed maximum, fully consecutive terms on all counts, French would have received an aggregate term of 156 years imprisonment.

[22] With respect to the nature of French's offenses, French intentionally and repeatedly victimized his daughters, beginning when they were as young as six and seven years old, for more than a decade. French exploited his position of trust as a father and an overnight custodian on numerous occasions and against multiple victims—readily distinguishing these facts from the caselaw he cites. *See Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011) (stating that a "harsher sentence is also more appropriate when the defendant has violated a position of trust that arises from a particularly close relationship between the defendant and the victim"). Further, despite K.F.'s pleas for him to stop on several occasions, French responded with threats and continued abuse. French's actions have already produced tangible consequences for K.F. and H.F., and they will almost certainly have long-term repercussions as they enter adulthood.

[23] With respect to French's character, he has been convicted of two misdemeanor traffic offenses: driving while suspended and an operating while intoxicated charge on which he violated his probation. French argues that he is not the worst offender; however, it is undisputed that he did not receive the maximum term on any conviction to be served consecutively. *E.g.*, *Evans v. State*, 725 N.E.2d 850, 851 (Ind. 2000) (noting that maximum sentences are "generally most appropriate for the worst offenders"). French also willingly exposed his other daughters to his crimes: K.F. testified that her then-toddler sister A.F. witnessed French rub K.F.'s genitals with his foot and that he did so while holding newborn H.F. Further, French admitted during cross-examination that during the pendency of this matter, he told a friend that he hoped someone would kill the prosecutor, and he solicited his friend to "dig up dirt" on the prosecutor. Tr. Vol. IV p. 13-14.[6] Finally, French does not deny that he regularly provided K.F. with alcohol or that he encouraged her to consume it. Through his actions and words over the course of more than a decade, French has demonstrated that he shows little respect for the well-being of his daughters and an inability or unwillingness to conform his behavior to the rule of law.

[24] In sum, we do not find the sentence imposed by the trial court to be inappropriate in light of the nature of the offenses or his character.

---

[6] He also admitted to saying "I hope somebody kills them both[.]" Tr. Vol. IV p. 14. The State contends that French was referring to K.F. and H.F. French makes no mention of it in his brief. It is unclear in the record who French meant by "them." Regardless, it does not shed a favorable light on his character.

The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.